

**IT IS HEREBY ADJUDGED and DECREED that the
below described is SO ORDERED.**

**Dated: May 07, 2021.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-51324-cag** |
| | § | |
| **JON CHRISTIAN AMBERSON,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

| | | |
|---|---|---|
| **JAMES ARGYLE MCALLEN, EL RUCIO** | § | |
| **LAND AND CATTLE COMPANY, INC.,** | § | |
| **SAN JUANITO LAND PARTNERSHIP,** | § | |
| **LTD., and MCALLEN TRUST** | § | |
| **PARTNERSHIP, LTD.,** | § | |
| | § | |
| Plaintiffs. | § | |
| | § | **ADVERSARY NO. 20-05060-cag** |
| v. | § | |
| | § | |
| **JON CHRISTIAN AMBERSON,** | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY
### JUDGMENT REGARDING PRECLUSIVE EFFECT OF FINAL JUDGMENT ON
### ARBITRATION AWARD (ECF NO. 13)

Came on for consideration the above-numbered adversary proceeding and, in particular,

1

Plaintiffs' Motion for Summary Judgment Regarding Preclusive Effect of Final Judgment on Arbitration Award (ECF No. 13) [1] ("Plaintiffs' MSJ"), Defendant's Response to Plaintiffs' Motion for Summary Judgment Regarding Preclusive Effect on Final Judgment on Arbitration Award (ECF No. 18) ("Response"), and Plaintiffs' Reply to Defendant's Response to Motion for Summary Judgment Regarding Preclusive Effect of Final Judgment on Arbitration Award (ECF No. 22) ("Reply"). The Court took Plaintiffs' MSJ, Response, and Reply under advisement without the necessity of a hearing. After considering the pleadings and the arguments contained therein, the Court finds Plaintiffs' MSJ should be granted in part and denied in part.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it involves determinations as to the dischargeability of particular debts. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court's Standing Order of Reference.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Plaintiffs James Argyle McAllen ("McAllen"), El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, Ltd., and McAllen Trust Partnership (collectively, "McAllen Parties" or "Plaintiffs") hired Jon Christian Amberson ("Amberson") and Amberson's law firm Jon Christian Amberson P.C. ("the Amberson Firm") to provide representation in a lawsuit filed by the McAllen Parties against Forest Oil Corporation ("Forest Oil Litigation") for causing environmental contamination to the McAllen Parties' ranches in Rio Grande Valley area of South Texas. When McAllen hired the Amberson Firm to represent him in the Forest Oil Litigation, Amberson was McAllen's son-in-law. Amberson and McAllen's daughter Mary

---

[1] All references to ECF numbers shall refer to documents filed in this Adversary Proceeding unless otherwise noted.

Margaret are now divorced. Amberson's representation of the McAllen Parties in the Forest Oil Litigation spanned at least twelve years. Ultimately, the McAllen Parties' claims against Forest Oil went to arbitration ("Forest Oil Arbitration"). The McAllen Parties received a favorable arbitration award against Forest Oil of over $25 million for damages and attorney's fees.[2] (ECF No. 13, Ex. D). In representing the McAllen Parties in the Forest Oil Litigation, the Amberson Firm billed and collected legal fees for hourly work in the amount of $2.34 million. After the award in the Forest Oil Arbitration was entered, Amberson contended his fee agreement entitled him to additional contingency fees for results achieved in the Forest Oil Litigation and Arbitration.

In 2009, McAllen executed a "reverse 1031 exchange" under 26 U.S.C. § 1031 to transfer a property to an entity named Cannon Grove Investments, LLC ("Cannon Grove"). McAllen, through Ranch Specialties Company, owned 10% of Cannon Grove. Amberson, through his entity Amberson Natural Resources, LLC ("ANR"), owned 90% of Cannon Grove. McAllen provided $4,500,000 to Amberson and ANR for the purchase of Cannon Grove ("Cannon Grove Funds"). McAllen contends the Cannon Grove Funds were a loan. Amberson contends the Cannon Grove Funds were a gift that ANR used for the purchase of Cannon Grove.

On January 23, 2015, the Amberson Firm sued McAllen in the 92nd Judicial District Court in Hidalgo County, Texas ("State Court Lawsuit") on a number of issues, including a claim that McAllen owed the Amberson Firm unpaid contingency fees for prevailing in the Forest Oil Arbitration based on the Fee Agreement between the parties. (ECF No. 13, Ex. E). McAllen asserted counterclaims against the Amberson Firm, Amberson individually, and Amberson Natural Resources. (*Id*.). The Amberson Firm sought to compel the fee dispute to arbitration. (*Id*.). The McAllen Parties sought to compel all of the claims to arbitration. (*Id*.). On April 23, 2018, the

---

[2] A district court in Harris County confirmed the arbitration award and entered a Final Judgment on October 9, 2012. (*Id*.) After a series of appeals, the Texas Supreme Court affirmed the Final Judgment on April 28, 2017. (*Id*.)

Hidalgo County District Court issued an order referring all of the parties' claims in the State Court Lawsuit to arbitration.[3] The parties chose Tom Collins ("Arbitrator" or "Collins") as arbitrator. The parties submitted extensive pre-arbitration and post-arbitration briefing. (ECF No. 13, Ex. A, p. 1) (ECF No. 13, Ex. A referred to hereinafter as "Award"). The parties "agreed to and submitted to the Arbitrator eight separate issues to be separately addressed and around which briefing, and exhibits were organized." (*Id*.). Collins conducted a ten-and-a-half-day arbitration hearing, which included 325 exhibits and testimony from seventeen witnesses including McAllen and Amberson.

On April 30, 2020, Collins issued an arbitration award ("Arbitration Award" or "Award") awarding McAllen damages against Amberson, the Amberson Firm, and ANR[4] for certain transactions that occurred during the Forest Oil Litigation. For the purposes of this Adversary Proceeding, the relevant damages are for litigation expenses in the Forest Oil Litigation/Arbitration that Amberson "fraudulently bill[ed]" to McAllen for various costs that were never incurred ("False Litigation Expenses"), a line of credit from First Community Bank ("FCB Loan") that the Amberson Firm took out and McAllen repaid, a $545,000 Promissory Note prepared by Amberson and made payable to McAllen (the "$545,000 Promissory Note"), and certificates of deposit provided by McAllen as security collateral for a loan taken out at Jefferson Bank by the Amberson Firm (the "Jefferson Bank Loan"). (*Id*.).

On July 20, 2020, Amberson[5] and ANR[6] each filed a chapter 11 bankruptcy case in this Court. ANR removed the State Court Lawsuit to this Court, which initiated a separate adversary

---

[3] In the State Court Lawsuit, Amberson contended that only issues related to its legal fee agreement for work on the Forest Oil Litigation were subject to arbitration. Regardless, the Hidalgo District Court referred all claims in the State Court Lawsuit to arbitration.
[4] The Arbitration Award found Amberson and the Amberson Firm were jointly and severally liable for all damages listed in the Arbitration Award. (Award, p. 51). The Award also found Amberson Firm and ANR were alter egos of Amberson, and that Amberson is personally liable for the claims proven against the Amberson Firm and ANR. (*Id*. p. 48). Amberson is the only named defendant in this lawsuit.
[5] Amberson's individual chapter 11 petition is Case No. 20-51324-cag (the "Amberson Bankruptcy Case").
[6] ANR's chapter 11 petition is Case No. 20-51302-cag (the "ANR Bankruptcy Case").

proceeding, Adv. No. 20-05046-cag (the "ANR Adversary").[7] In the ANR Adversary, the McAllen Parties moved to confirm the Arbitration Award (Adv. No. 20-05046-cag, ECF No. 12). Thereafter, Amberson, the Amberson Firm, and ANR (collectively, the "Amberson Parties") moved to vacate or modify the Arbitration Award (Adv. No. 20-05046-cag, ECF No. 19). The Court held a hearing and received evidence and argument on the Motion to Confirm Arbitration Award and Motion to Modify or Vacate Arbitration Award. On September 11, 2020, the Court issued an oral ruling confirming the Arbitration Award in full. The Court entered its Order Granting McAllen Parties' Motion to Confirm Pre-Petition Arbitration Award on September 23, 2020 (Adv. No. 20-05046-cag, ECF No. 36) and its Order Denying the Motion to Vacate or Modify Arbitration Award filed by the Amberson Parties (Adv. No. 20-05046-cag, ECF No. 37). The Court also issued a Final Judgment on September 23, 2020 (Adv. No. 20-05046-cag, ECF No. 38).

After the Court entered its Final Judgment, Amberson filed a Notice of Appeal (Adv. No. 20-05046-cag, ECF No. 43) (the "Amberson Appeal") to appeal this Court's Order Granting McAllen Parties' Motion to Confirm Pre-Petition Arbitration Award (Adv. No. 20-05046-cag, ECF No. 36); Order Denying the Motion to Vacate or Modify Arbitration Award filed by the Amberson Parties (Adv. No. 20-05046-cag, ECF No. 37); and the Final Judgment (Adv. No. 20-05046-cag, ECF No. 38). The Amberson Appeal is presently pending at the United States District Court for the Western District of Texas, Case No. 5:20-cv-01193-FB. As of the date of this Memorandum Opinion, the parties have completed briefing in the Amberson Appeal. After the Amberson Appeal was filed, this Court denied Amberson's Motion to Stay Judgment Pending Appeal (Adv. No. 20-05046-cag, ECF No. 49).

---

[7] The State Court Lawsuit was removed from the Hidalgo County District Court to the United States Bankruptcy Court for the Southern District of Texas. Judge Eduardo Rodriguez granted a Joint Motion to Transfer Venue on July 31, 2020. (Adv. No. 20-05046-cag, ECF No. 9). This Court received a Notice of Removal (Adv. No. 20-05046-cag, ECF No. 1). The case was received into the Western District of Texas on July 31, 2020.

## SUBSTANCE OF THE ARBITRATION AWARD

### I.  False Litigation Expenses

At Arbitration, McAllen alleged he paid Amberson and/or the Amberson Firm $2,985,00.00 for non-existent bonds, retainers, and other charges Amberson solicited in furtherance of the Forest Oil Litigation. McAllen sought recovery for Amberson's alleged breach of fiduciary duty, fraud, violations of the Texas Theft Liability Act, conversion, and an additional award of exemplary and statutory damages. (Award, p. 17).

In response, Amberson alleged he was entitled to payment of a contingent fee for successfully arbitrating the Forest Oil Litigation and receiving a sizeable award for the McAllen Parties. Amberson contended the McAllen Parties could offset the False Litigation Expenses against his contingent fee award. Amberson also argued—alternatively—if he was not awarded the contingent fee, then he was not responsible to the McAllen Parties for the False Litigation Expenses because McAllen paid Amberson those funds pursuant to a "wink-and-nod arrangement." According to Amberson, the Amberson Firm would send invoices for legal expenses with an understanding that those funds would be "re-purposed" to subsidize Amberson's firm and family expenses during the Forest Oil Litigation. At the time of the Forest Oil Litigation, Amberson was married to McAllen's daughter Mary Margaret.

The Arbitration Award did not find Amberson was entitled to a contingent fee. Moreover, the Arbitration Award awarded the McAllen Parties $2,583,700.00 for False Litigation Expenses. In awarding damages for False Litigation Expenses, the Arbitration Award considered the evidence submitted and testimony elicited at the ten-and-a-half-day arbitration hearing. The Arbitration Award discussed the following subcategories of charges at issue.

- **"Hidalgo County Bond" of $250,000.00**: On February 25, 2005, the Amberson Firm sent McAllen a letter informing him that he would need to pay a "cost bond" of $250,000 for "granting . . . our Motion for Entry upon the Premises of the Forest Gas Plant." The Amberson Firm represented the funds were for a "request [that] the Court cut in half and is fair and equitable . . . ." (Award, p. 18). On March 2, 2005, McAllen submitted a check to the Amberson Firm for $250,000. The Arbitrator determined "Amberson's statements in his letter to McAllen requiring a $250,000 payment pursuant to a Court Order . . . were not true." (*Id*.). On cross-examination, Amberson did not indicate expenses sought in the letter were part of his "wink and nod" agreement; rather, he "tried to justify it with very confusing and unsupported explanations" that the Arbitrator found "not credible." (*Id*., p. 19).

- **"American Arbitration Association Initial Retainer Fee" of $100,000.00**: On May 19, 2005, Amberson faxed Mr. and Mrs. McAllen a letter invoicing them $225,000 for expert retainers and $100,000 for "American Arbitration Association (Arbitration Fee)." (*Id*.). The May 19 letter included a lengthy explanation regarding the process of appointing an arbitrator from the American Arbitration Association. The May 19 letter represented that Forest Oil had already chosen an AAA arbitrator and explained that selection of an arbitrator of choice through AAA would "prevent the Defendants from gaining an upper hand in the [Forest Oil Litigation." (*Id*.). Within a week, McAllen remitted a check for $325,000. The Arbitrator found "[n]one of the five expense items were valid." (*Id*.). "The AAA was never in any way involved in the Forest Oil Litigation." (*Id.).* Amberson never paid $100,000 to the American Arbitration Association. (*Id*.).

- **"Arbitration Appeal Bond" of $300,000.00**: After years of protracted litigation in the Forest Oil Litigation, the Texas Supreme Court found the case was arbitrable. Ten days after the Texas Supreme Court issued its ruling in *Forest Oil Corp. v. McAllen* which directed the parties to arbitration, Amberson mailed McAllen a bill dated September 16, 2008 for an arbitration appeal bond in the amount of $300,000 as a "reimbursable expense." (*Id.* p. 21). McAllen submitted a check to the Amberson Firm for $300,000 about twelve days later. Amberson deposited the money into his operating account and spent it. (*Id*. p. 22).

- **"Harris County Arbitrator Compensation" for $250,000.00**: On December 7, 2009, Amberson wrote and faxed McAllen a letter stating, "[t]he Court requested that we deposit with the registry of the Court the sum of [$250,000] . . . . by December 9, 2009" to ensure that arbitrators will have an incentive to remain on the panel. McAllen paid the $250,000 within two days as requested. The funds were deposited into the Amberson Firm's IOLTA account and then transferred to the Amberson Firm's operating account. Amberson's then-law partner, Larissa Hood, who assisted with the Forest Oil Litigation, testified that the Harris County District Court never ordered $250,000.00 to be paid into the Court's registry. (*Id*. p. 24). The Arbitration Award concludes there is no evidence or testimony that the $250,000 was paid by Amberson into the Court's registry. (*Id*. p. 25).

- **"Expert Retainers" of $1,683,700**: Throughout the Forest Oil Litigation, the Amberson Firm billed McAllen $1,685,000 for expert retainers. These monies were billed as "reimbursable expenses." (*Id.).* The Arbitrator concluded those expenses were primarily "made-up expenses" for false invoices. (*Id*.). The Arbitrator reviewed amounts allegedly paid to named experts. The Arbitrator determined that of the $1,685,000.00 the Amberson

8

Firm received from McAllen to "hire experts or conflict them out," Amberson retained $1,683,700.00. (*Id*. at 27). The funds were not held in trust, nor were they paid to the experts. (*Id*.).

At Arbitration, Amberson's defense was that he and McAllen had a "wink and nod understanding" so he "was generating invoices and requests on any basis [he] could use to allow McAllen to deduct the expenses and allow [himself] to 're-purpose' the payments and use them as [he] saw fit." (*Id*. p. 29). Still, the Arbitrator found Amberson's "attempts under cross-examination at explanation and justifications on made-up requests were not defensible." (*Id*.). After weighing witness testimony and documentary evidence, the Arbitrator did not find any evidence credible in supporting a special understanding between Amberson and McAllen. (*Id.)*. The Arbitrator determined Amberson engaged in a breach of fiduciary duties, fraud, and violations of the Texas Theft Liability Act ("TTLA"), and conversion by accepting the False Litigation Expenses. Consequently, the Arbitrator awarded damages to the McAllen Parties in the principal amount of $2,583,700.00.[8]

## II.  First Community Bank Loan

The Amberson Firm took out a line of credit with First Community Bank ("FCB Loan") starting in 2005. (*Id*. p. 34). Amberson renewed the FCB Loan multiple times, with the line of credit approaching $2,000,000.00 by June 21, 2012. (*Id*.). Amberson "falsely represented to McAllen that the [FCB Loan] was used to cover arbitration expenses." (*Id*. p. 35). To repay the FCB Loan, McAllen borrowed $2,000,000 from Bank of America on June 21, 2012 (the "BOA Loan"). McAllen also reimbursed Amberson for all interest paid on the FCB Loan, which totaled

---

[8] The damages were broken down in the Arbitration Award as follows: (1) $2,583,700.00 in actual damages; (2) $1,100,000.00 in pre-judgment interest; and (3) $42,000.00 as statutory damages under the TTLA. (Arbitration Award, pp. 33–34).

$652,953.13. (*Id*.). In 2017, McAllen paid off the BOA Loan, which included interest. Amberson acknowledged that McAllen paid $2,652,953.13 on account of the FCB Loan.

The Arbitrator concluded there is no evidence that the FCB Loan was used for payment of expenses in the Forest Oil Arbitration. (*Id*.). Amberson conceded he "benefited" from McAllen paying the FCB Loan plus interest. Amberson, however, contended he was entitled to a contingent fee for prevailing in the Forest Oil Arbitration, and that the $2,652.953.13 paid by McAllen to satisfy the FCB Loan and reimburse Amberson for interest paid should be offset against his contingent fee. The Arbitrator "weighed evidence cited under case law in the briefing." (*Id*. pp. 34–35).

The Arbitration Award grants McAllen's claims for equitable subordination and unjust enrichment but does not recite the legal elements or explain how the facts apply to the legal elements. (*Id*. p. 35). McAllen's claim for breach of fiduciary duty was also granted. In justifying why the claims were granted, the Arbitration Award states:

> Amberson and his firm breached numerous fiduciary duties owed to his client McAllen, including to refrain from self-dealing and to inform his client in writing of a conflict of interest; to act with absolute candor, openness and honesty; to disclose all material matters; and to act in utmost good faith, honest dealing and integrity.

(*Id*. p. 35). The Arbitration Award grants damages of $2,652,953.13. This Court confirmed the Arbitration Award in full. (Adv. No. 20-05046, ECF No. 36).

### III.     $545,000 Promissory Note

Amberson executed a promissory note for $545,000 payable to McAllen (the "$545,000 Note"). Amberson testified the purpose of the $545,000 Note was to reduce his 2007 income for tax purposes. As a result of the $545,000 Note, the Amberson Firm's income on IRS Form 1099 was reduced from $1,762,010.74 to $1,217,010.74. (Award, p. 36). The Arbitrator found the "tax benefit to Amberson as the promisor established adequate consideration to support the promissory

10

note contract." (*Id*.).

The $545,000 Note matured in 2017. Amberson did not pay McAllen on the $545,000 Note. As such, the Arbitration Award concludes "McAllen is entitled to recovery of the $545,000.00 principal amount against Amberson for breach of contract." (*Id*.). The Award also found the damages arising from the $545,000 Note transaction amount to a breach of fiduciary duties, stating:

> Amberson and his Firm as McAllen's lawyers breached fiduciary duties owed McAllen as the client, including to refrain from self-dealing and to inform the client in writing of a conflict of interest; to act with absolute candor, openness and honesty; to disclose all material matters; and to act in utmost good faith, honest dealing and integrity.

(*Id*.). The Arbitration Award characterizes the $545,000 Note transaction as "an improper self-interested transaction by a fiduciary [Amberson] who desired to lower his tax liability for 2007." (*Id*. p. 36). Ultimately, the Arbitrator stated McAllen is entitled to recover $916,257.00 from Amberson (the principal balance of the $545,000 Note plus pre-judgment interest of $371,257.00). (*Id*.). This Court confirmed the Arbitration Award in full. (Adv. No. 20-05046, ECF No. 36).

## IV.    Jefferson Bank Loan

During the Amberson Firm's representation of the McAllen Parties in the Forest Oil Arbitration, Amberson asked McAllen to provide collateral to fund a loan from Jefferson Bank. (Award, p. 43). Amberson represented that the Jefferson Bank loan would fund the Forest Oil Arbitration. (*Id*.). McAllen and his wife pledged certificates of deposit worth $1,750,000.00 to collateralize a $1,750,000.00 loan. Later, in 2011, McAllen and his wife pledged an additional $2,250,000.00 to secure 100% of an additional loan sought by the Amberson Firm. (*Id*.). The Arbitrator concluded "there was no evidence that any loan proceeds were used for the Forest Oil Arbitration proceeding." (*Id*.). Instead, the Arbitration Award found "there was evidence the loan proceeds were used for other of Amberson's Firm's or personal expenses." (*Id*.).

11

The Arbitration Award concluded "the evidence establishes that Amberson by a false representation as to the use of the loan proceeds to fund Forest Oil Arbitration-related expenses induced McAllen . . . to pledge the certificates as 100% collateral for his Firm's loan." (*Id*.). The Arbitration Award also found that Amberson's inducement of the McAllen Parties to pledge collateral for the Jefferson Bank Loan constituted a breach of fiduciary duties by Amberson, including:

> the duty to refrain from self-dealing or to use the attorney-client relationship to benefit his own interests, including the duty to timely inform the client of a conflict of interest; the duty to act with absolute perfect candor, openness, and honesty, without concealment or deception, and with full disclosure, including to inform the client of all material matters; and the duty of loyalty and utmost good faith, of fair and honest dealing, and to act with integrity of the strictest kind.

(*Id*.). Amberson's defense was that the intended source for repaying the Jefferson Bank Loan was recovery on his contingent fee claim. The Amberson Firm defaulted on the Jefferson Bank Loan. (Supplemental Award, p. 1). On June 17, 2020, Jefferson Bank took control of the certificates of deposit pledged by Mr. and Mrs. McAllen and applied them to the Amberson Firm's outstanding indebtedness in the amount of $1,750,301.21. (*Id*. p. 2). As such, the Arbitrator awarded the McAllen Parties actual damages of $1,750,301.21. This Court confirmed the Arbitration Award in full. (Adv. No. 20-05046, ECF No. 36).

## PARTIES' CONTENTIONS

On October 23, 2020, Plaintiffs filed this Adversary Proceeding against Amberson asserting the four categories of damages awarded in the Arbitration Award discussed above are nondischargeable debts under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6)[9]. Thereafter, the McAllen Parties filed Plaintiffs' MSJ arguing the Arbitration Award and Final Judgment are entitled to preclusive effect in this Adversary Proceeding under collateral estoppel. According to

---

[9] All section references hereinafter shall refer to 11 U.S.C. unless otherwise noted.

the McAllen Parties, the Arbitrator adjudicated issues that are determinative of the nondischargeability claims brought in this case and the Arbitration Award establishes all of the essential elements of the McAllen Parties' claims under §§ 523(a)(2), (a)(4), and (a)(6). The McAllen Parties contend the findings in the Arbitration Award and Final Judgment have preclusive effect because this Court entered its Final Judgment on the Arbitration Award. (Adv. No. 20-05046-cag, ECF No. 38).

In response, Amberson argues the Arbitration Award cannot be given preclusive effect because it lacks the legal elements and evidence necessary to support a finding that the Arbitration Award is nondischargeable. Amberson further argues he is not bound by the statements and arguments presented in the Arbitration because the Arbitration was not actually and fully litigated as is required for preclusion. Amberson contends the Award is too informal and imprecise for preclusive effect. According to Amberson, the purpose of initiating the State Court Litigation that led to Arbitration was for the Amberson Firm to recover a contingent fee claim from McAllen on the Forest Oil Litigation, which is "a wholly different legal dispute from the dischargeability dispute raised in the Complaint." (ECF No. 18, ¶ 8). Amberson argues the Arbitration Award itself—a document that the Arbitrator described as being a "'reasoned Award' which is . . . more detailed than a short-form 'standard Award' but is not in the form of formal Findings of Fact and Conclusions of Law" (Award, p. 2)—is not binding on this Court. Finally, Amberson argues the Award cannot be given preclusive effect because to do so would infringe on federal interests in dischargeability determinations.

Here, the Court must consider two issues. First, the Court must determine whether the Arbitration Award has preclusive effect under collateral estoppel. If the Arbitration Award has preclusive effect, then the Court must consider whether the Award substantiates that damages

owed by Amberson to McAllen for certain claims in the Award qualify as nondischargeable debts under §§ 523(a)(2)(A), (a)(4), and/or (a)(6) based on the Award. The Court analyzes each issue in turn.

### SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). Rule 56 contemplates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence." *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted). Summary judgment "cannot be supported solely on the ground that . . . [the nonmoving party] failed to respond." *John v. State Board of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698, 709 (5th Cir. 1985). Where

14

the movant has made a sufficient showing of the absence of a genuine issue of material facts, however, "mere [unsworn] allegations in the pleadings are insufficient to show a triable issue of fact." ***GHR Energy Corp. v. GHR Pipeline Corp. (In re GHR Energy Corp.)***, 62 B.R. 226, 231 (Bankr. S.D. Tex. 1986) (citing ***Golden Oil Co. v. Exxon Co.***, 543 F.2d 548 (5th Cir. 1976)). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." ***LeMaire v. Louisiana***, 480 F.3d 383, 390 (5th Cir. 2007). When there is no genuine issue for trial, the Court should grant summary judgment. ***Id***.

<u>**LEGAL ANALYSIS**</u>

**I.     Collateral Estoppel Effect of Arbitration Award**

The McAllen Parties argue the Arbitration Award is entitled to preclusive effect under collateral estoppel. Generally, the doctrine of collateral estoppel is applicable in discharge exception proceedings. ***Sheerin v. Davis (In re Davis)***, 3 F.3d 113, 114 (5th Cir. 1993) (citing ***Grogan v. Garner***, 498 U.S. 279, 284 (1991)). A prior judgment may bar discharge of the debt arising under that judgment if "(1) the law of the state where the judgment was rendered would give preclusive effect to the judgment and (2) under federal law, no exception to the full faith and credit statute, 28 U.S.C. § 1738 applies." ***Wisely v. Horne (In re Horne)***, Adv. No. 10–5063, 2011 WL 350473, at *4 (Bankr. W.D. Tex. Feb. 2, 2011)) (citing ***Viking Dynamics, Ltd. v. O'Neill (In re O'Neill)***, 260 B.R. 122, 126 (Bankr. E.D. Tex. 2001)). Under Texas law, a party seeking to invoke collateral estoppel must establish: "(1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case." ***Pancake v. Reliance Ins. Co. (In re Pancake)***, 106 F.3d 1242, 1244 (5th Cir. 1997). The state law test is different from the federal common law test; however, the federal common law test must be considered in determining if

collateral estoppel applies in a bankruptcy non-dischargeability claim. **Horne**, 2011 WL 350473, at *3. The federal test, which places the burden on the party invoking estoppel, provides:

> (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.

**RecoverEdge v. Pentecost**, 44 F.3d 1284, 1290 (5th Cir. 1995) (citing **Davis**, 3 F.3d at 114). Stated differently, "[c]ollateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question— that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." **Dennis v. Dennis (In re Dennis)**, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted).

To determine if a case was "fully and fairly litigated" for the purposes of collateral estoppel, the Court must have "record evidence demonstrating that the state court conducted a hearing at which [the creditor] was put to its evidentiary burden." **Pancake**, 106 F.3d at 1245. In **Garner v. Lehrer (In re Garner)**, the Fifth Circuit held that default judgments are considered to have been fully and fairly adjudicated when the trial court conducts a hearing or trial where the plaintiff met his evidentiary burden. 56 F.3d 677, 681 (5th Cir. 1995).

Here, the Award shows Collins conducted a ten-and-a-half-day arbitration hearing, which included 325 exhibits spanning seventeen 3-ring binders, and testimony from seventeen witnesses including McAllen and Amberson. (Award, p. 2). "The Arbitrator took all the exhibits into evidence with the understanding each exhibit would be given appropriate weight as assessed and weighed by the Arbitrator." (*Id.*). The parties submitted extensive pre-arbitration and post-arbitration briefing. (*Id.*). Moreover, the parties "agreed to and submitted to the Arbitrator eight separate issues to be separately addressed and around which briefing and exhibits were organized."

(*Id.*). In this Court, Amberson challenged the final and binding effect of the arbitration by moving to modify or vacate the Arbitration Award (Adv No. 20-05046, ECF No. 19). After considering Amberson and McAllen's arguments regarding confirming the Arbitration Award, this Court determined it was appropriate under Texas law to confirm the Award and enter a Final Judgment. (Adv. No. 20-05046, ECF No. 36).

Amberson contends the Award was not fully litigated because McAllen's Affidavit attached to his MSJ "suggests that the Arbitrator did not have a fully developed evidentiary record in making the Award." (ECF No 18, ¶ 40). Amberson argues that his participation in the Arbitration was based on his claims to recover on a contingency fee agreement he had with the McAllen Parties concerning the Forest Oil Litigation. (*Id.*, ¶ 42). Amberson alleges he "had no incentive in the Arbitration to fully litigate the elements of fraud or defalcation . . . [because] McAllen's fiduciary duty, fraud, and theft claims [ ] did not serve to meaningfully enhance the damages in the Award." (*Id.*). The Court disagrees.

After a ten-and-a-half-day arbitration involving "four rounds of separate pre- and post-hearing briefs," including briefing on scenarios where there was "no enforceable contingent fee agreement and no arrangement [between McAllen and Amberson]," submission of "325 exhibits covering 17 three-ring binders," and receipt of testimony of "16 live witnesses and one witness by agreed deposition video and transcript excerpts," the Arbitrator entered a fifty-three page Arbitration Award. (Award, p. 2). The Court rejects Amberson's argument that the legal issues addressed in the Arbitration Award—including McAllen's allegation that Amberson engaged in fraud and breach of fiduciary duty—were not fully litigated. Amberson's argument that he "did not fully litigate his claims against McAllen" because he "sought to recover on the contingent fee agreement" does not diminish the fact that the Hidalgo County District Court

referred *all* of the claims in the State Court Lawsuit to Arbitration. Amberson—who was a practicing attorney himself at the time of the Arbitration—knew or should have known that he had a duty to defend against all of the claims the McAllen Parties brought against him individually and the Amberson Firm, including the claims for fraud, breach of fiduciary duty, theft, and conversion. The McAllen Parties provided evidence that Amberson submitted briefing and presented evidence on those issues at Arbitration. (ECF No. 22, Ex. H). Moreover, the Award states the parties submitted "briefing on scenarios where there was "no enforceable contingent fee agreement and no arrangement [between McAllen and Amberson]." (Award, p. 2).

The Arbitration Award includes extensive descriptions of the facts, evidence, and testimony elicited, thus supporting a conclusion that the facts were essential to the judgment in the first action. *See Pancake*, 106 F.3d at 1244 (stating that a determination that collateral estoppel applies under Texas law requires "facts sought to be litigated . . . were essential to the prior judgment."). Finally, the parties were adversaries in the State Court Litigation and resulting Arbitration. Therefore, the Court concludes collateral estoppel applies to the Arbitration under Texas law.

The analysis does not end there. The Court must also consider the federal test for collateral estoppel. The key difference between the state law test and the federal test for application of collateral estoppel is that "the issue [must] be *identical* for federal collateral estoppel." ***Kesselring v. Doyal (In re Doyal)***, Adv. No. 09–1020, 2010 WL 796941, at *3 (Bankr. W.D. Tex. Mar. 4, 2010) (emphasis in original). As such, the Court must "examine the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contained sufficiently detailed facts and findings to apply to each of the elements of a § 523 claim." *O'Neill*, 260 B.R. at 127 (citing ***Crain v. Limbaugh (In re***

*Limbaugh)*, 155 B.R. 952, 956 (Bankr. N.D. Tex. 1993)).

The Court rejects Amberson's argument that the Arbitration Award cannot be given preclusive effect because to do so would infringe on federal interests in dischargeability determinations. As explained by the Fifth Circuit, "the United States Supreme Court declined to bar the offensive use of collateral estoppel from arbitration in subsequent federal court litigation, though the Court required consideration of 'federal interests warranting protection'" *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 223 (1985)). Generally, issue preclusion "may be applied . . . in bankruptcy dischargeability proceedings." *Pancake*, 106 F.3d at 1244. Here, the Court is considering "federal interests warranting protection" by applying the more exacting federal test for collateral estoppel. *Universal Am. Barge Corp.*, 946 F.3d at 1131 (citation omitted).

## II.     Application of Facts and Findings in Award to § 523 Causes of Action

The Arbitration Award considered eight "issues" regarding funds McAllen paid Amberson and/or the Amberson Firm in furtherance of the Forest Oil Litigation. The Award provided damages for a number of transactions. The McAllen Parties' MSJ requests this Court grant preclusive effect to the Award's grant of damages for the False Litigation Expenses, FCB Loan, $545,000 Promissory Note, and Jefferson Bank Loan. First, the McAllen Parties contend the damages for the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan as provided in the Award demonstrate those debts are nondischargeable under § 523(a)(2)(A). Next, the McAllen Parties allege the damages for the False Litigation Expenses, $545,000 Note, FCB Loan, and Jefferson Bank Loan as provided in the Award demonstrate those debts are nondischargeable under § 523(a)(4). Finally, the McAllen Parties argue the damages for the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan as provided in the Award demonstrate those debts are

19

nondischargeable under § 523(a)(6). The Court will analyze if the record in the Arbitration Award contains facts and findings to apply to each of the elements of a § 523 claim.

### A. Nondischargeability of McAllen Parties' Claims Under § 523(a)(2)(A)

The McAllen Parties maintain that the damages in the Arbitration Award provided for False Litigation Expenses, FCB Loan, and Jefferson Bank Loan are non-dischargeable under § 523(a)(2)(A), because they are debts that arose due to Amberson's false representations. Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services . . . to the extent obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial position." 11 U.S.C. § 523(a)(2)(A). A creditor must prove its nondischargeability claim by a preponderance of the evidence. *General Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). For a debt to be found nondischargeable under § 523(a)(2)(A), a creditor must show:

> (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance.

*Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018). To establish "false pretenses" or "false representations" under § 523(a)(2)(A), "a creditor must show actual fraud as opposed to merely constructive fraud." *Horne*, 2011 WL 350473, at *8. The debt must have been "obtained by frauds involving 'moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'" *Acosta*, 406 F.3d at 372 (citation omitted).

The McAllen Parties contend each of the elements described in *Saenz* is established in the Arbitration Award regarding McAllen's claims arising out of the False Litigation Expenses, the FCB Loan, and the Jefferson Bank Loan. The Court will address the applicability of § 523(a)(2)(A) to each debt in turn.

### 1. False Litigation Expenses

In the Arbitration Award, the Arbitrator found the McAllen Parties were entitled to damages for fraud in the principal amount of $2,583,700.00 regarding the False Litigation Expenses. (*Id*. at p. 32). The McAllen Parties contend: (1) the Arbitration Award should be given preclusive effect as to the False Litigation Charges, and, (2) the Arbitration Award supports a finding that the False Litigation Charges are nondischargeable under § 523(a)(2)(A). In response, Amberson contends the Arbitration Award should not be given preclusive effect because it noted specifically with respect to the False Litigation Expenses:

> this Award does not constitute formal Findings of Fact and Conclusions of Law as might be entered by a trial court. The parties agreed to a "reasoned award." Thus, while the Arbitrator below enters his determinations as to [the False Litigation Expense] claims by summarizing the elements of each claim, such is not intended as formal findings and/or conclusions.

(Award, p. 31). Amberson argues because the Award is not formal findings of fact and conclusions of law, the Court should not accept the Award for preclusion purposes. Amberson contends this Court should reserve judgment on whether the False Litigation Expenses are nondischargeable under § 523(a)(2)(A) and permit Amberson to develop the facts.

Here, the Court concludes collateral estoppel applies under Texas law. In a dischargeability proceeding, however, the Court is also required to consider the more exacting federal test. The federal test contains one additional requirement: a determination that there are "specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue . . . ." ***Dennis v. Dennis (In re Dennis)***, 25 F.3d 274, 278 (5th Cir. 1994). In a subsection titled "Fraud," which is in the section discussing the False Litigation Expenses, the Arbitration Award states:

> Amberson made material misrepresentations to McAllen; Amberson knew the representations were false; Amberson intended McAllen to act in reliance on his

21

false representations and to pay the 42 fraudulent payment requests; and McAllen actively and justifiably relied on Amberson's representations and McAllen and his entities suffered damage in the principal amount of $2,583,700.00.

(Award, p. 32). The Arbitrator's finding of fraud tracks the requirements for a fraud claim under Texas law. A claim for fraud in Texas requires a showing of the following elements: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result. *Fluorine on Call, Ltd. v. Fluorogas, Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004).

The Arbitrator's finding of fraud in the Arbitration Award recites the same *prima facie* elements as § 523(a)(2)(A). (Award, p. 32). Moreover, the Arbitration Award—confirmed by this Court—included specific subordinate findings of fact to support the finding of fraud. The McAllen Parties alleged in the State Court Lawsuit that the False Litigation Expenses were fraudulent, and that issue was referred to and fully argued in Arbitration. At the ten-and-a-half-day arbitration, the parties appeared and presented evidence on the facts underlying the fraud claim. Regarding the fraud claim in relation to the False Litigation Expenses, the Arbitrator "place[d] great weight on the assessment of the credibility of Amberson in his almost full week of testimony." (Award, p. 29).

The facts stated in the Award meet the McAllen Parties' burden of proving by a preponderance of the evidence that the False Litigation Expenses are nondischargeable under § 523(a)(2)(A).The Arbitrator reviewed documentary evidence, including letters and/or invoices from the Amberson Firm to McAllen requesting the funds that comprise the False Litigation Expenses, including the $250,000 for the Hidalgo County Bond, $100,000 for "American Arbitration Association Initial Retainer Fee," $300,000 for "Arbitration Appeal Bond," $250,000

22

for "Harris County Arbitrator Compensation," and $1,683,7000 for "expert retainers." Those letters and invoices were also included as evidence attached to the McAllen Parties' MSJ. (ECF No. 13, Ex. D). Amberson's testimony, which is quoted in the Award, concedes he owed $250,000 for the Hidalgo County Bond, $100,000 for the American Arbitration Association Initial Retainer Fee, and $300,000 for the Arbitration Appeal Bond. (Award, pp. 19, 21, 23). At Arbitration, Amberson testified there "was no written order" and he "knew there was not a written order" from the Harris County District Court to support his representation to the McAllens that the District Court Judge required a deposit in the court registry of $250,0000 to pay Harris County arbitrator compensation. (*Id.*, pp. 23–25). Amberson testified at Arbitration that "none of the experts asked for" the $1,683,700.00 that he billed for expert retainer fees. (*Id.* p. 27). Amberson also testified these monies were spent elsewhere, not held in trust for McAllen, and not returned to McAllen when the monies were not needed for anticipated retainers. (*Id.* p. 25). Because the finding of fraud on the False Litigation Expenses in the Award meets the *prima facie* elements for § 523(a)(2)(A), and because the Award contains extensive factual findings to support a claim for fraud, the Court finds the False Litigation Expenses of $2,583,700.00 in actual damages and $1,100,000.00 in pre-judgment interest are nondischargeable under § 523(a)(2)(A).[10]

### 2. FCB Loan

Next, the McAllen Parties assert the Award demonstrates Amberson made false representations as to the FCB Loan, and that the findings of false representations in the award support that the FCB Loan is nondischargeable under § 523(a)(2)(A). In response, Amberson

---

[10] The section of the Award that dealt with the False Litigation Expenses also awarded $42,000.00 in statutory damages under the TTLA. The McAllen Parties did not argue that the TTLA finding supported its § 523(a)(2)(A) claims. Also, the Court relied on the Award's finding of fraud—not the TTLA claims—to grant summary judgment under § 523(a)(2)(A). Therefore, the issue of whether the TTLA statutory damages are nondischargeable under § 523(a)(2)(A) is reserved for trial.

argues the Award cannot have preclusive effect because it does not establish the elements of § 523(a)(2)(A). (ECF No. 18, ¶ 27). The Court agrees with Amberson.

Collateral estoppel is relevant "only when 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question with the same *prima facie* elements as the bankruptcy issue . . . ." ***Casseb & Pearl, Inc. v. Skaja (In re Skaja)***, 313 B.R. 198, 202 (W.D. Tex. 2004) (citing ***Dennis***, 25 F.3d at 278). During the Forest Oil Arbitration, Amberson took out a line of credit with First Community Bank and "falsely represented to McAllen that the line of credit was used to cover arbitration expenses." (Award, p. 35). When the FCB Loan matured in 2012, McAllen borrowed $2,000,000 from Bank of America to pay it off and reimbursed Amberson $652,953.13 for interest. (*Id*.). The Award concludes: "[b]ased on Amberson's untrue representation regarding the use of the loan proceeds, McAllen voluntarily paid off Amberson firm's debt/line of credit/loan with First Community Bank." (*Id*.).

The Arbitrator uses the finding of false representations to support his award of damages for equitable subordination, unjust enrichment, and breach of fiduciary duty. The section of the Award that addresses the FCB Loan does not discuss whether the McAllen Parties brought a cause of action of fraud in regard to the FCB Loan. Moreover, the Award does not spell out the legal elements of a fraud claim, nor describe if the facts and evidence support a claim for fraud. Because the Award does not substantiate a claim for fraud as it relates to the FCB Loan, the Court does not find the Award should be granted preclusive effect as to the nondischargeability of the damages awarded for the FCB Loan under § 523(a)(2)(A).

### 3. Jefferson Bank Loan

The McAllen Parties argue Amberson is precluded from re-litigating the issues underlying the Jefferson Bank Loan because the essential elements of nondischargeability under

24

§ 523(a)(2)(A) were established in the Arbitration Award. In response, Amberson contends the section of the Arbitration Award discussing the award of damages regarding the Jefferson Bank Loan should not be given preclusive effect because it does not establish the elements of § 523(a)(2)(A). The Court agrees with Amberson.

During the Forest Oil Arbitration, the McAllen Parties—at Amberson's request—provided collateral to secure the Jefferson Bank Loan. (Award, p. 43). The McAllens pledged certificates of deposit totaling $2,250,000 that were foreclosed upon when the Amberson Firm defaulted on the Jefferson Bank Loan. (Supplemental Award, p. 1). The Arbitration Award concludes, "the evidence establishes that Amberson by a false representation as to the use of the loan proceeds to fund Forest Oil Arbitration-related expenses induced McAllen . . . to pledge the certificates as 100% collateral for his Firm's loan." (Award, p. 43). The Arbitration Award also found Amberson's inducement of the McAllen Parties to pledge collateral for the Jefferson Bank Loan constituted a breach of fiduciary duties by Amberson. (*Id*.). The Arbitrator awarded the McAllen Parties actual damages of $1,750,301.21 in a Supplemental Arbitration Award. (Supplemental Award, p. 2).

The Award and the Supplemental Award do not spell out whether Amberson met the other elements of fraud under Texas law—i.e., whether Amberson's misrepresentation was material; whether Amberson knew the misrepresentation was false when he made it or that he asserted it without knowledge of its truth; and whether the misrepresentation was intended to be acted upon. Accordingly, the Court cannot make a finding of issue preclusion because it is not clear that the Arbitration Award deals with the "identical dischargeability issue in question with the same *prima facie* elements as the bankruptcy issue . . . ." *Skaja*, 313 B.R. at 202. Therefore, the Court does not find the Award should be granted preclusive effect as to the nondischargeability of the damages

awarded for the Jefferson Bank Loan under § 523(a)(2)(A).

**B. Nondischargeability of McAllen Parties' Claims Under § 523(a)(4)**

Next, the McAllen Parties argue the damages for the False Litigation Expenses, the FCB Loan, the Jefferson Bank Loan, and the $545,000 Promissory Note are nondischargeable as defalcation under § 523(a)(4) because the Arbitrator justified his award of those damages, in part, due to Amberson's breach of fiduciary duties. The McAllen Parties also argue the damages for the False Litigation Expenses are nondischargeable as fraud under § 523(a)(4) because the Award determined those damages arose, in part, due to Amberson's fraud against the McAllen Parties. In response, Amberson asserts the Award cannot be given preclusive because its substance does not support a finding that § 523(a)(4) is applicable to the False Litigation Expenses, FCB Loan, Jefferson Bank Loan, and $545,000 Promissory Note.

Section 523(a)(4) provides that a debt for "fraud or defalcation . . . while acting in a fiduciary capacity" is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(4). The Fifth Circuit has stated, "[t]his bar to discharge reaches 'debts incurred through abuses of fiduciary positions . . . [and] involving] debts arising from the debtor's acquisition or use of property that is not the debtor's." ***Light v. Whittington (In re Whittington)***, 530 B.R. 360, 387 (Bankr. W.D. Tex. 2014) (citing ***FNFS, Ltd. v. Harwood (In re Harwood)***, 637 F.3d 615, 620 (5th Cir. 2011)). "The term 'fiduciary' in this context is construed narrowly, limited to 'technical trusts' and to traditional fiduciary relationships involving 'trust-type' obligations imposed by statute or common law." ***Harwood***, 637 F.3d at 619–20. Determining if a fiduciary relationship exists is "a question of federal law; however, state law is important in determining whether or not a trust obligation exists." ***Id***. The Award establishes Amberson was the McAllen Parties' attorney when he accepted funds for the False Litigation Expenses, the FCB Loan, and the Jefferson Bank Loan, as well as

26

when Amberson executed the $545,000 Promissory Note. (Award, pp. 32, 35, 36, 43, ). The Award repeatedly notes that Amberson as counsel owed numerous fiduciary duties to his clients the McAllen Parties. (*Id.*). Under Texas law, "once the parties enter into an attorney-client relationship, the attorney owes fiduciary duties to his client." ***SMWNPF Holdings, Inc. v. Devore***, 165 F.3d 360, 365 (5th Cir. 1999) (citing ***Willis v. Maverick***, 760 S.W.2d 642, 645 (Tex. 1988)). As such, the Court finds the Award establishes Amberson had a fiduciary relationship with the McAllen Parties.

The Court must now consider whether the Award demonstrates Amberson incurred a debt to the McAllen Parties by fraud or defalcation while acting in his fiduciary capacity. Fraud in a fiduciary capacity under § 523(a)(4) requires "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud." ***Whittington***, 530 B.R. at 388. There must be a showing of "wrongful intent." *Id*. Defalcation "may be used to refer to *nonfraudulent* breaches of fiduciary duty." ***Bullock v. BankChampaign, N.A.***, 569 U.S. 267, 276 (2013). As such, defalcation "includes a culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior." *Id*. at 267. The Court addresses whether § 523(a)(4) applies to each debt in turn.

### 1. False Litigation Expenses

The McAllen Parties argue damages awarded against Amberson for the False Litigation Expenses are nondischargeable as fraud under § 523(a)(4) because the Arbitrator found Amberson committed fraud against the McAllen Parties. The McAllen Parties also argue the finding of breach of fiduciary duty regarding the False Litigation Expenses constitutes defalcation under § 523(a)(4). In response, Amberson contends the Award should not be given preclusive effect because the Arbitration Award includes a disclaimer that the False Litigation Expenses "do not constitute

formal Findings of Fact and Conclusions of Law." (Award, p. 31). Amberson further argues the Award cannot be given preclusive effect because Amberson did not fully litigate the fraud and breach of fiduciary duty claims. Amberson contends the Arbitration Award is too informal and imprecise for preclusive effect.

After a ten-and-a-half-day arbitration involving "four rounds of separate pre- and post-hearing briefs," including briefing on scenario where there was "no enforceable contingent fee agreement and no arrangement [between McAllen and Amberson]," submission of "325 exhibits covering 17 three-ring binders," and receipt of testimony of "16 live witnesses and one witness by agreed deposition video and transcript experts," the Arbitrator entered a fifty-three page Arbitration Award. (Award, p. 2). The Court rejects Amberson's argument that the legal issues addressed in the Arbitration Award—including McAllen's allegation that Amberson engaged in fraud— were not fully litigated. Moreover, this Court found it appropriate under Texas law to confirm the Award. The Court confirmed the Arbitration Award and entered a Judgment. As such, the Court must consider whether the Award can be given preclusive effect under the federal test, and, if so, whether the finding of fraud as to the False Litigation Expenses is sufficient to find that the damages are a nondischargeable debt under § 523(a)(4).

The Arbitrator found Amberson and the Amberson Firm submitted forty-two "fraudulent payment requests" to the McAllen Parties that were paid. (Award, p. 32). The Award concludes these payment requests, which are referred to as the False Litigation Expenses, gave rise to claims for fiduciary duty and fraud. The Arbitrator determined Amberson's collection of the False Litigation Charges constituted fraud. In a subsection titled "Fraud," the Arbitration Award states:

> Amberson made material misrepresentations to McAllen; Amberson knew the representations were false; Amberson intended McAllen to act in reliance on his false representations and to pay the 42 fraudulent payment requests; and McAllen actively and justifiably relied on Amberson's representations and McAllen and his

entities suffered damage in the principal amount of $2,583,700.00.

(*Id*.). As to the breach of fiduciary duty claim, the Award states "Amberson as counsel owed numerous fiduciary duties to his clients, the McAllen Parties," including:

> duties of loyalty; utmost good faith; candor; to refrain from self-dealing; to act with integrity of the strictest king (sic); fair and honest dealing; full disclosure; undivided loyalty; honesty; to inform the client of matters material to the representation; and to inform the client of a conflict of interest.

(*Id*.). The Arbitration Award concludes Amberson's breach of fiduciary duties on the False Litigation Expenses resulted in damages to the McAllen Parties in the principal amount of $2,583,700.00.

Fraud under § 523(a)(4) requires "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud." ***Whittington***, 530 B.R. at 388 (citing ***Bullock***, 569 U.S. at 272)). "In other words, it requires a showing of 'wrongful intent.'" ***Id***. (citing ***Bullock***, 569 U.S. at 274)). Fraud also requires "a false statement or omission." ***Bullock***, 569 U.S. at 274. The Court finds the Award supports that Amberson has committed fraud in a fiduciary capacity. As the McAllens' attorney, Amberson had a fiduciary duty that arose at the time he entered into the attorney-client relationship with the McAllens. Amberson—in his capacity as the McAllen Parties' counsel—wrote letters and sent faxes on firm letterhead, communicated through his law firm paralegal, sent e-mails, and submitted invoices for $2,583,700.00 in non-existent litigation and arbitration expenses. (Award, pp. 17–34). At the Arbitration, "Amberson tried to justify at one point what he admitted were fraudulent charges by testifying that these invoices were for 'advancements.'" (*Id*. p. 27). Amberson, however, "[made] up dollar amounts for experts[,] include[ed] them in bills to McAllen as 'reimbursable expenses,'" did not "hold the monies in trust," and did not "pay any of these amounts to the named experts." (*Id*. p. 28). Moreover, the Arbitrator determined Amberson committed fraud, breach of fiduciary duty, conversion, and

29

violation of the Texas Theft Liability Act by accepting these False Litigation Expenses. (*Id*. p. 32). "This discharge exception 'was intended to reach those debts incurred through abuses of fiduciary positions . . . ." *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987)). Amberson's abuse of his position as the McAllen Parties' attorney placed him in a fiduciary position wherein he made forty-two "fraudulent payment requests" that he represented were for expenses in the Forest Oil Arbitration. (Award, p. 27). For these reasons, the Court finds the Award supports a finding that the $2,583,700.00 in actual damages and $1,100,000.00 in pre-judgment interest regarding the False Litigation Expenses are nondischargeable under § 523(a)(4).[11]

### 2. $545,000 Promissory Note

The McAllen Parties argue damages awarded against Amberson for the $545,000 Promissory Note are nondischargeable as defalcation under § 523(a)(4) because the Arbitrator found that Amberson breached his fiduciary duties. The McAllen Parties contend Amberson cannot relitigate the issues underlying their claim of nondischargeability under § 523(a)(4) because the Arbitration Award is entitled to preclusive effect. In response, Amberson argues the Award is not entitled to preclusive effect because it does not establish the elements of § 523(a)(4). Moreover, Amberson argues the facts stated in the Award regarding the $545,000 Promissory Note are not sufficient to establish the requisite state of mind for defalcation established in *Bullock*. 569 U.S. 267. Amberson also argues the Award does not state facts sufficient to establish defalcation under § 523(a)(4) because the Award makes clear that Amberson did not obtain any money or property from the McAllens in connection with the $545,000 Promissory Note. Rather, the Award states on

---

[11] The section of the Award that dealt with the False Litigation Expenses also awarded $42,000.00 in statutory damages under the TTLA. The Court relied on the Award's finding of fraud—not the TTLA claims—to grant summary judgment under § 523(a)(4) Therefore, the issue of whether the TTLA statutory damages are nondischargeable under § 523(a)(4) is reserved for trial.

its face that the $545,000 Promissory Note was to reduce Amberson's tax liability for 2007 and thereby to subsidize Amberson's family-related expenses at the time he was married to McAllen's daughter.

In *Bullock*, the Supreme Court considered the scope of the term "defalcation," concluding that it includes "a culpable state of mind" that involves "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269. According to Amberson, the Award merely establishes that Amberson breached fiduciary duties to the McAllen Parties and that the transaction was "improper"—not that Amberson committed any intentional or reckless wrongdoing in entering into the transaction. (ECF No. 11, ¶ 21). The Court agrees with Amberson.

The Award found that Amberson executed a promissory note payable to McAllen for $545,000 in an effort to reduce his 2007 income for tax purposes. (Award, p. 36). The $545,000 Promissory Note became due and payable in 2017, but Amberson has not paid McAllen on the Note. (*Id*.). As such, the Award concludes this was "an improper self-interested transaction by a fiduciary who desired to lower his tax liability for 2007." (*Id*.). Amberson's behavior also caused the Arbitrator to find "Amberson and his Firm as McAllen's lawyer breached fiduciary duties owed McAllen as the client," including:

> to refrain from self-dealing and to inform the client in writing of a conflict of interest; to act with absolute candor, openness and honesty; to disclose all material matters; and to act in utmost good faith, honest dealing and integrity.

(*Id*.). The Award, however, fails to describe Amberson's state of mind or intent. The Award also does not characterize Amberson's conduct as grossly reckless.

Under *Bullock*, a bankruptcy court's determination that a debt is nondischargeable for defalcation under § 523(a)(4) is subject to a "heightened standard" for culpability. 569 U.S. at 277.

31

"The state of mind necessary to prove defalcation is 'one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.'" ***Whitaker v. Moroney Farms Homeowners' Ass'n (In re Whitaker)***, 642 F. App'x. 345, 348 (5th Cir. 2016) (citing ***Bullock***, 569 U.S. at 269)). Defalcation requires a showing that debtor's conduct is "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." ***Bullock***, 569 U.S. at 274. The Award does not address Amberson's *mens rea*, characterize his behavior as grossly reckless, or indicate if he had actual knowledge of his wrongdoing. Moreover, the Award does not consider if Amberson "consciously disregard[ed] (or[was] willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id*. Therefore, the Court cannot give the Award preclusive effect because it does not contain sufficient findings to support a claim for defalcation under § 523(a)(4). Accordingly, the issue of whether the $545,000 Promissory Note is nondischargeable under § 523(a)(4) shall proceed to trial.

### 3. FCB Loan and Jefferson Bank Loan

The McAllen Parties contend the Award supports a finding that the FCB Loan and Jefferson Bank Loan (collectively, the "Bank Transactions") are nondischargeable under § 523(a)(4) because the damages awarded against Amberson arose due to fraud and defalcation. The McAllens cite to portions of the Award finding the Bank Transactions constituted a breach of fiduciary duty because Amberson "had a duty to refrain from self-dealing" as the McAllens' attorney. (Award, pp. 35, 43). In response, Amberson alleges the Court cannot grant the Award preclusive effect as to § 523(a)(4) because the Award fails to sufficiently allege defalcation to sustain a determination of nondischargeability.

As to the FCB Loan, Amberson argues McAllen paid that loan off without any request

from Amberson and because McAllen's daughter (Amberson's wife at the time) wanted him to do so. Amberson argues the Award does not demonstrate he had the requisite intent to deceive McAllen. Amberson also argues he expected the Bank Transactions would be repaid from the contingent fee he believed he was entitled to in the Forest Oil Arbitration. Amberson contends McAllen "could not have believed the [Bank Transactions] were for the purpose of funding direct expenses in the Forest Oil Litigation, which would have been invoiced" and that he "must have understood that the [Bank Transactions] . . . were not for the same purpose as Amberson's ordinary bills." (ECF No. 18, ¶ 36).

After reviewing the Award, the Court finds that as to the Bank Transactions, the Arbitrator determined Amberson "breached numerous fiduciary duties owed to his client McAllen," including:

> the duty to refrain from self-dealing or to use the attorney-client relationship to benefit his own interests, including the duty to timely inform the client of a conflict of interest; the duty to act with absolute perfect candor, openness, and honesty, without concealment or deception, and with full disclosure, including to inform the client of all material matters; and the duty of loyalty and utmost good faith, of fair and honest dealing, and to act with integrity of the strictest kind.

(Award, pp. 35, 43). The Award, however, fails to describe Amberson's frame of mind, intent, or whether he was grossly reckless in allowing McAllen to repay the FCB Loan or pledge collateral for the Jefferson Bank Loan. *Bullock* requires a determination of Amberson's state of mind to prove defalcation. 569 U.S. at 269. Defalcation requires a showing that debtor's conduct is "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." *Id*. at 274. The Award does not consider if Amberson had "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.'" *Id*. Therefore, the Court cannot give the Award preclusive effect as to the Bank Transactions because it does not contain sufficient findings to support a claim for fraud or

defalcation under § 523(a)(4). Therefore, the issue of whether the damages awarded in the Arbitration Award and Supplemental Award for the FCB Loan and Jefferson Bank Loan are nondischargeable under § 523(a)(4) shall proceed to trial.

### C.  Nondischargeability of McAllen Parties' Claims Under § 523(a)(6)

Last, the McAllen Parties argue the damages in the Award regarding the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan are nondischargeable under § 523(a)(6). According to the McAllen Parties, the Arbitrator's finding that Amberson's actions violated the TTLA and converted the funds submitted for False Litigation Expenses establishes that there was "an objective substantial certainty of harm" to the McAllen Parties. Moreover, the McAllen Parties contend collateral estoppel should apply because the issues were actually litigated at Arbitration, the parties introduced documentary evidence and examined witnesses, and the Arbitrator made findings.

In response, Amberson addresses that the Award did not characterize the FCB Loan or the Jefferson Bank Loan as conversion or theft. The Court agrees. Therefore, the Court will consider only whether the damages related to the TTLA and conversion charges that arose due to the False Litigation Expenses are subject to discharge under § 523(a)(6). Amberson further contends the Award does not establish the elements of § 523(a)(6) as to the False Litigation Expenses, the FCB Loan, or the Jefferson Bank Loan.

Under § 523(a)(6), a debtor shall not receive a discharge from any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." ***Kawaauhau v. Geiger***, 523 U.S. 57, 61 (1998) (emphasis in original). In

*Geiger* the Supreme Court distinguished intentional torts from negligent torts, concluding "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)". *Id.*, at *10 (citing *Geiger*, 523 U.S. 61–64). The Fifth Circuit has articulated the test for willful and malicious injury as inquiring whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm." ***Miller v. JD Abrams, Inc. (In re Miller)***, 156 F.3d 598, 606 (5th Cir. 1998).

Under Texas' law of issue preclusion, "the issues in the two suits need not be identical." ***Horne***, 2011 WL 350473, at *6. For collateral estoppel to apply in the context of a nondischargeability action, however, "the issue at stake must be identical to the one involved in the prior action." ***In re Davis***, 3 F.3d at 115. The Arbitrator's finding that Amberson's billing of the False Litigation Expenses constituted a TTLA violation and conversion does not, alone, provide enough support to sustain a claim under § 523(a)(6). The record does not provide factual findings regarding Amberson's *mens rea* or intent as to the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan. On the whole, the Award does not include language to support a finding by this Court that Amberson had either a subjective substantial certainty of harm or that Amberson subjectively intended to cause harm to the McAllen Parties. Accordingly, the Award cannot be given preclusive effect as to the McAllen Parties' claims under § 523(a)(6). The issue of whether the False Litigation Expenses, FCB Loan, and Jefferson Bank Loan are nondischargeable under § 523(a)(6) shall proceed to trial.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment Regarding Preclusive Effect of Final Judgment on Arbitration Award (ECF No. 13) is GRANTED IN PART and DENIED IN PART. Specifically, the Plaintiffs' Motion for Summary Judgment Regarding

Preclusive Effect of Final Judgment on Arbitration Award is GRANTED as to a finding that the Arbitration Award is subject to preclusive effect as to the nondischargeability of the False Litigation Expenses under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). All other relief is DENIED.

A separate order will be entered in conformity with this Memorandum Opinion.

# # #